I will try to keep a reasonable track of time, but we'll do the best we can. This is a special sitting to hear argument in the case of Haixin Sun v. Sessions, No. 15-70024. And, Counsel, you may begin. Thank you, Honor. This is Thomas John Trigo for Petitioner Sun. Petitioner Sun was introduced to Christianity by his supervisor, Xinru Zhang, in China. Mr. Xu Wengxin preached Christianity to Sun and his family in 2003. Towards the end of 2003, in November, Sun and his parents agreed to attend Christian services. And by Christmas of 2003, Mr. Sun and his parents were attending services once a week on Sundays. Counsel, Counsel, we have very little time together, so if you don't mind, I'll get right to the point. Yes, Your Honor. It's of concern to me, at least. The immigration judge and the BIA held that your client's testimony was not credible. And among other reasons, there was a reliance on exaggeration and inconsistency, for example, saying that his mother's nose was broken, but then, in testimony, exaggerating that to say that she was hospitalized for a month. That's just one example. Why is that not a sufficient ground to disbelieve your client? Because, actually, Your Honor, if you look at when that question was asked, one month, it actually, he testified, more or less, it was a month. But then, when the actual government attorney had cross-examined him and said, so, a month your mom spent in the hospital. So she actually assumed the actual time frame, not so much that he agreed to that time frame. He said, more or less, it was a month. And then, actually, he testified consistently. Well, Counsel, I'm looking at page 168 of the excerpts of record. 168? And the testimony question was, when you said she was admitted for a short time, what do you mean for a short time? And then, your client says, if my memory is correct, after my mother was injured, she merely was admitted and stayed in the hospital for one month, more or less. That was his testimony. Right, more or less, correct. And that's why we don't know if it was more or we don't know if it was less. Well, the question, in my mind, is the same as Judge Graber's. We have an adverse credibility determination. We also have the immigration judge apparently relying, at least in part, on the failure to corroborate, bring corroborating evidence. Right. So my question is, is there enough here, putting aside the absence of corroboration, for an immigration judge, reasonably, to conclude that your client wasn't credible? That's an issue. On this issue, he says a month for a broken nose, more or less. That seems exaggerated. There's a couple other instances, and I could go into them, where the testimony is, I think a reasonable person could find perhaps not credible. Is that enough, or are we nitpicking the record here? I honestly think if you look at comparing that to the record, that's a very interesting question. But the judge actually starts his credibility determination on lack of corroborating evidence, not based on truly inconsistency. Except, counsel, we have many cases that say if there's one reason among many that is supported by substantial evidence, it doesn't matter if some of the other reasons are incorrect. All we need is one. I understand that, Your Honor. But the issue in this factor is that we don't know whether or not, what facts are true, because of the fact that we didn't have an affidavit from his mother. And if she was able to, as he wanted to be able to get, and he said, Your Honor, you feel it's very important to get those documents, that affidavit of what happened to my mother, and her medical issue, and getting the medical records, I'll have her try to go get it. But I was afraid because, you know, they monitor the mail. But then the judge had stated on the record other ways that would be not detected by the Chinese government. But his fears were reasonable. So even if you look like in the same case in Aden, there were inconsistencies in his statement, Aden's testimony. You know, saying that he was poor, that he was illiterate. Meanwhile, Aden was holding up a book that had English handwriting on it, and he attested that his father had written on it. He was wearing affluent clothes. Additionally, he said he learned English from videotapes. But then the judge gave him notice and opportunity to get other documents to prove that he was part of a sub-clan, and that that clan existed. And so in this case, the same thing. When there's some kinds of things that kind of go against the record, but even Aden, in there, the judge gave him an opportunity to say, hey, you know what, if you give me this corroborating evidence, now I have more to balance on credibility. And when there's actually looking at the totality of the circumstances on this estra, he actually was consistent with his statement. He was consistent with his testimony. So to corroborate that, I mean, I think it would be best to have the person whose nose is broken to write the letter. His more concern was that he was putting his mom in jeopardy by having that letter sent from China, and he didn't think of any other way. So the judge demanded, why don't you have these things? And he said, well, I feared that the police would get them. And that's supported by the country condition reports on page 210, I believe, of the record. Actually, 216 of the record, second paragraph, stating that they monitor the national and international mail. So he feared that if they would send that, it would put them in harm's way. Plus, the police, that coupled with the fact that the police told his family, hey. Castle, there's another place in the record, though, where the judge said, why couldn't he get evidence about the hospital stay? And he said he asked, and his mother said she couldn't get it, basically. That's correct. But here, that is correct. Why isn't that a sufficient inquiry into that point? Because as held in Wren, as stated in Wren, that, as it says here, as it says on, I have it, if an applicant states at the first hearing that he does not have the evidence and cannot reasonably obtain it, the IJ should grant him an opportunity at that point to state why he cannot reasonably obtain it. My point is, he already said that. He said, I would like to tell the judge that basically this is my opinion, that I can't get it, because my mother said she couldn't get the record. So that seems to me to be not a request, but already an answer. Correct. But wouldn't there be other evidence, like the government attorney had suggested, such as the medical prescription meds that she had during that period of time, that could support that with a letter corroborating that her nose was broken? So, I mean, that would have been an opportunity if he would have given notice of that. I mean, the government attorney had suggested that. Counsel, let me ask the question, I ask the court a little bit differently. What is there in this record to support the adverse credibility determination, other than the absence of corroboration? Honestly, nothing, because under SESTRA, if you look at the internal statements and the oral statements and the written statements, there's no inconsistency between his testimony. Well, there may be no inconsistency, but the judge finds not believable. Wait, let me finish. Finds not believable his testimony that his mother got a broken nose and spent a month in the hospital. Well, that's interesting. You should say that because the actual country condition reports under the torture section state that that was a major concern in 2009 in the country condition reports. And if you give me a moment, I can get to the page of that. No, I'm not sure that helps me, though. I'm asking this question. He takes the stand and says my mother spent a month in the hospital for a broken nose. Okay. The judge says that's not believable. Nobody spends a month in the hospital for a broken nose. Is that a credibility determination made without regard to the absence of corroborating evidence? I believe that would be more of an expert testimony corroboration, and I don't know if the judge would have that experience to make that judgment. Is there any other basis for the adverse credibility determination in your view in this record? And I want to ask the same question to your opponent, but it seems to me that the non-Wren basis seems to be based on at least two things. One is exaggerated testimony. My mother is in the hospital for a month. I'll be locked up for the rest of my life if I return. And his inability or unwillingness to file a timely certificate of church attendance. Can you focus on the first one for a moment? Did he eventually file a certificate of church attendance? Yes, he did, and he actually had his membership. That was supported in the tab. I believe tab F was the one that was withdrawn, which was actually showing the business license of the church, but his actual membership... Right, right. And so the IJ says, yeah, but you gave me a whole bunch of excuses for why you couldn't get it for me before, and I don't believe those excuses. I understand the excuses, but the judge ultimately allowed it into the evidence. My question is whether the judge's belief that his excuses were not credible can form the basis of a lack of credibility ruling. Without cooperation, without giving him an opportunity for collaborating that with a church witness or with the actual people who are involved, how could the judge actually make that basis without giving him an opportunity to provide that evidence and notice of that? And then... As soon as you finish your answer to Judge Hurwitz's question, we'll hear from the government. It's been about ten minutes. And I'm sorry, Your Honor, what was the second issue you were addressing? No, that was the one I was asking about. I was asking about whether or not the judge's findings about Mr. Sun's credibility with respect to the delay in producing the church attendance statements could form the basis. That would have been... You've answered the question. Okay. Thank you. Let's hear from the government. May it please the court, my name is Catherine Clark, appearing for the respondent. Petitioner's counsel here concedes just today that we don't know what the facts are, what facts are true. And when that happens in these cases, that actually favors affirming the decision of the immigration judge and the Board of Immigration Appeals as to credibility because establishing what facts are true is the burden of Mr. Sun and not of the immigration judge. Well, let me interrupt you for a second because I want to ask you the same question I asked your friend. It seems to... You know, we see a lot of these cases and the lack of credibility ruling in this case is pretty thin. One is that you said your mother spent a month in the hospital for a broken nose and she must have spent less. And second, you didn't get me these records as quickly as I thought you could and your excuses didn't sound very good to me. What other basis is there other than lack of corroboration for the lack of credibility determination? Respectfully, with regard to the period of time in the hospital for the broken nose, the issue is not simply that it was implausible, although the implausibility of that period was cited. On page 79, the immigration judge also noted that the petitioner did not mention his mother's hospitalization in his declaration at all. So it was not simply a question of whether Mr. Sun said in his declaration that his mother was in the hospital for one period of time and then perhaps he wavered on whether it was quite as long in his testimony. His declaration at page 308 and 309 simply doesn't mention a hospitalization at all. So in your view, is that sufficient? That one item for the immigration judge to make a lack of credibility determination? That would be sufficient on its own, yes, but it does not have to be. And that's consistent with this court's case law in, I believe it's Ling Wong, finding that even just one inconsistency or omission can form a sufficient basis for – I'm sorry, that's in Lin Wah Jiang, based on a single omission from a declaration as compared to testimony can form a sufficient basis for an adverse credibility finding. That's also consistent with this court's holding in RISC. So one finding would be sufficient, but there is also here a case of a situation where there's embellishment with regard to petitioner's statement that he would be locked up for the rest of his life if there's inconsistency with regard to, again, why the church documents were untimely. And although that does tie back in some sense to corroboration, petitioner is essentially asking the court to ignore, to hold that, even a flat-out lie, even a flat-out lie that could be sort of exposed very materially as such, has to be ignored in the credibility assessment if it goes in any way to whether corroboration can be provided or why corroboration has not been provided. So it simply does not make sense for the immigration judge to be required – and the court's case law does not require the immigration judge to entirely divorce the credibility assessment from the corroboration assessment. Could I ask you one thing that I have a question about, is this notion that he can only be required or should be required or be given an opportunity to provide corroboration if his testimony is not credible. In other words, if it's credible, then he's entitled to – or the immigration judge has to ask for corroboration or give him an opportunity. I don't understand that. If he's found credible, what is there left? Particularly in this sort of case of – If he's found not credible, in this case the finding of not credible to the extent that it was restituted to a significant degree on the lack of corroboration. Again, respectfully, it's not simply the lack of corroboration, but it's also the multiple and conflicting explanations for that lack. So if he is willing to lie as to why he refused to corroborate or why he could not corroborate, then that goes directly to credibility and not just to corroboration. So is it the view of the board that only if someone is found to be credible is corroboration – can corroboration be asked for or the person be given an opportunity to produce it? That is not the view of the board. The view of the board is that corroboration can be asked for and that the statute indeed specifically authorizes it to be asked for in either type of situation. So if the petitioner is found credible, then 1158B1Bii applies, and the statute specifically authorizes that even where the applicant satisfies the trier of fact that the testimony is credible, but the trier of fact decides that that credible testimony does not meet the burden of proof, and this court has decided in Aden that that is in fact a possibility and a permissible set of facts, even when that happens, the applicant should provide evidence that corroborates otherwise credible testimony. So Wren exists in the universe of 1158B1Bii where the testimony is otherwise credible, the immigration judge should provide the opportunity, the notice that corroboration is required, and then either the opportunity to provide that evidence, so that would be the advance notice, or the opportunity to explain its absence. So advance notice is not required as long as the opportunity to explain is provided, and here the immigration judge did satisfy those requirements, but in fact the immigration judge did not even have to do that because the testimony was not otherwise credible. So essentially the immigration judge was covering every single possible base in this case where that was not actually a requirement because the testimony was not credible. And this court has also recently affirmed that structure, that sort of sequential analysis in Yali Wang. So the court says in Yali Wang, as long as the testimony is not credible, we don't exist sort of in the universe of Wren where all these procedures have to be followed, and that was even the case before under Ling Wang, but in Yali Wang the court made it explicitly clear that, yes, this is what Wren requires. And so that is sort of the most recent case law that directly governs. Right, but we still get back to the question, and I want to make sure you give me your best answer to it. We still have to find that the IJ's credibility determination was supported by substantial evidence. And I take it your position is the substantial evidence that supports it is the inconsistency between his application and his testimony about his mother's broken nose? There's that. There's also the inconsistency and embellishment regarding what would happen to him if he returned to China. Is that an inconsistency? He's a petitioner and says, gee, if I get sent back, I may be put away for the rest of my life. That may be incorrect and it may be an exaggeration, but does it make him less than credible? I think it is probably fair to characterize it as an embellishment or an exaggeration, and I do believe that's actually what the immigration judge said, but, again, those things can go to the credibility analysis as one of the relevant factors under the statute. Okay, so you've got the broken nose and the I could go back for the rest of my life. What other substantial evidence supports the adverse credibility determination? I'm not saying more is needed. I'm just asking. Sure. The inconsistency regarding why the church documents were untimely, that's at the immigration judge's decision page 78 to 79, and the testimony is at 135 to 36. The inconsistency regarding why there were no documents, even so much as a letter from his mother, no less the hospital documents, that's at 76 and 77 of the immigration judge's decision. On those, aren't we getting back into the lack of corroboration as a basis for finding a lack of credibility? When it comes to the inconsistent explanations, those are not simply the lack of corroboration. It's not simply that the IJ is saying, well, the only problem here is that you did not provide the documents. It also goes back to the reasons why. Because first you have the petitioner. If I understand it correctly, you're saying that lack of corroboration is just the absence of a document. But if someone says, I don't have my homework because the dog ate my homework and I don't have my homework because I was in Canada and I don't have my homework because my little brother spilled his breakfast on it, those are themselves inconsistencies that are not mere lack of corroboration. Is that your position? Precisely. And if the court does not have any additional questions, I can sum up. Because substantial evidence... Go ahead and do that. I do not. No, I have not. Because substantial evidence supports the agency's adverse credibility determination, the requirements of Wren do not apply, and the court should deny the petition for review. Thank you. Mr. Tiriga, you may have a couple of minutes for rebuttal. I think you have some time remaining. Thank you. As far as the timeframe of his mom's nose being broken and spending time in the hospital, well, you know, he went to somewhere to get his asylum application done and he did a statement to the best of his ability. And on direct he only mentioned that his mom was broken. It only came out, and that's on page 154 of the record, line 14. Then he goes in on cross. It's when only it comes out on cross when the question is asked, well, how long did your mom spend in the hospital? That's on page 167. Sir, on the bottom, it goes, how long was your mom hospitalized, line 22 and 23. And then it goes on to 168. And then that's when it goes into more or less a month. So are we going to hold someone responsible for something they didn't address in their actual declaration that comes out on cross as an inconsistency, as opposed to they were consistent on direct exam with their statement? And then if not, not give them an opportunity to at least try to corroborate it? Is that what we're saying? And then, moreover, if you want to say embellishing is the harm, because if he went back to his home country, let's look at that. Why would they tell his parents that to tell him that? Because they want him to come back and turn himself in to confess. And if he doesn't, and they catch him and they arrest him, they're going to lock him up for life. What would get the person back more, scaring the parents to get their child back and just tell them, oh, it's all right, when he comes back we'll just put him under supervision? They're going to throw any threats out there to scare him to come back. That makes it more credible. And then he's afraid to send things to his parents, I mean from his parents to here, because, one, they're going to find out that he is a fugitive, and because he's a fugitive they may actually be harmed. This all is corroborated in his testimony and through his written declaration. So if somebody asks something on cross, then they should be given, and it comes out at the time frame and the judge wants it corroborated, then he should be given the opportunity to at least prove it. And then once the judge said, hey, try this way, try that way, private courier, another person coming from China, a friend that may be going back that can go pick it up, then he was like, you know what, Your Honor, if you give me the opportunity, I'll do that. So there really isn't. If you could sum up, I think you said. So there is compelling enough argument here that you can't just say because of the reasons why he doesn't have it, which were credible, actually, because the country conditions support it, that they do check the mail, and that he didn't just know of any other way to get the documents, but if given an opportunity after the judge resolved that, those issues, that would be proper notice, and that's the real case in here, or advance notice. So if those issues are raised, he should be at least given an opportunity to get those documents. And the same thing with the church witness, who can corroborate if they held onto it for a period of time. So we do, I feel there is enough compelling evidence in here to hand it back down for further fact-finding, Your Honor. Thank you, counsel. We appreciate very much everybody making themselves available today in this sort of disembodied format, and we appreciate the arguments of both counsel. The case just argued is submitted, and we are adjourned for the purpose of this case. Thank you all. Thank you, Your Honor. Thank you, Your Honor. Thank you.
judges: Graber, Hurwitz, Korman